[No. 8247. Department One. February 4, 1910.]

INLAND TRADING COMPANY, *Appellant*, v. U. F. EDGECOMBE, *Appellant*, W. R. CUNNINGHAM, Senior, *Respondent*.[1]

USURY—ILLEGAL EXACTION. A note for $500, given as a bonus or fee for procuring a state contract at a public sale and for furnishing $960 to buy the land, for which latter sum a note with the maximum rate of interest was also taken, is usurious, under Rem. & Bal. Code, §§ 6251, 6255, especially where the value of the service was inconsiderable; since the contract was entire and part of the consideration was illegal, and a contract usurious in part is illegal as to the whole.

CHATTEL MORTGAGES—PRIORITIES—FUTURE ADVANCES. The lien of a senior chattel mortgage on a crop of wheat to secure certain enumerated notes, cannot be extended to cover advances subsequently made for seed, provisions, storage, and harvesting expenses, as against the lien of a junior mortgage, where the mortgage made no provision for future advances or for such items.

[1]Reported in 106 Pac. 768.

CHATTEL MORTGAGES—PROCEEDS—ACCOUNTING—EXPENSE ITEMS AL-
LOWABLE. Upon an accounting for the proceeds of a crop of wheat
delivered by the mortgagor to, and handled by, a usurious mortgagee,
he must account for the net proceeds only; and freight, warehouse,
storage, and commission charges and expenses, incurred in handling
and selling the grain, are properly chargeable against the proceeds;
but the mortgagee is not entitled to charges for "insurance" not
authorized by the mortgagor or junior mortgagee, nor for "interest"
where there was no evidence to show upon what it was based.

Appeals by plaintiff and a defendant from a judgment of
the superior court for Spokane county, Warren, J., entered
January 28, 1909, upon findings in favor of a codefendant,
in an action to foreclose a chattel mortgage.  Reversed.

*Adams & Naef*, for appellants.

*Merritt, Oswald & Merritt*, for respondent.

GOSE, J.—The appellant, a junior mortgagee, instituted
this action against its co-appellant, the mortgagor, and the
respondent, a prior mortgagee, for the purpose of foreclos-
ing a chattel mortgage on a quantity of wheat, alleged to be
in the possession of respondent, and to secure an accounting.
The respondent answered, admitting the possession of the
wheat, setting forth his prior mortgage, the specific indebted-
ness secured by it, and certain enumerated advances made to
the mortgagor subsequent to the execution of his mortgage,
and alleging that the security is insufficient to satisfy the
mortgage indebtedness and the subsequent advances.   The
appellant Edgecombe, by way of answer and cross-complaint,
alleged, *inter alia,* that the respondent exacted and received a
bonus of $500, as a consideration for the note of $960
pleaded in the respondent's answer, in addition to interest
on the note at the rate of twelve per cent per annum.   The
appellant corporation, in its reply, made a like charge of
usury.   There was a judgment for $134.69, in favor of ap-
pellant corporation and against the respondent, from which
the former and appellant Edgecombe have appealed.

On the issue of usury the court found:

"That said note of nine hundred and sixty ($960) dollars was given by said defendant Edgecombe and his said wife as a substitute and to take the place of another note for nine hundred and sixty ($960) dollars given by the defendant Edgecombe to the defendant Cunningham on or about the 3rd day of June, 1905, and that there was no other or further consideration for the said note of nine hundred and sixty ($960) dollars, dated June 3, 1905. That the sole and only consideration for the said nine hundred and sixty ($960) dollar note of June 3, 1905, was an advancement by the said W. R. Cunningham, Sr., to the state of Washington on four contracts for the purchase of school land from the State of Washington, which contracts were owned by said defendant Edgecombe. That at the time the defendant Edgecombe signed the said note for nine hundred and sixty ($960) dollars on said June 3, 1905, said defendant Cunningham exacted and received from the said defendant Edgecombe his promise to pay five hundred ($500) dollars as a fee for securing said contracts and furnishing the said nine hundred and sixty ($960) dollars for the benefit of said Edgecombe. That on the said 3rd day of June, 1905, the defendant Edgecombe gave to the defendant Cunningham his promissory note for five hundred ($500) dollars, for the said fee. The defendant Edgecombe has paid to the defendant Cunningham the said note of five hundred ($500) dollars given for said fee as aforesaid."

The finding is in harmony with the evidence of the respondent. The appellant Edgecombe, however, testified that the $500 note was given solely as a bonus or premium for the loan of the $960. It is admitted that the interest rate of the note is twelve per cent per annum. No deduction was made on account of the $500 note. We will consider the case on the assumption that the finding is a correct interpretation of the evidence.

The first question presented for determination is, was the execution of the $500 note usurious. The applicable provisions of our statute are:

"Any rate of interest not exceeding twelve (12) per centum per annum agreed to in writing by the parties to the contract,

shall be legal, and no person shall directly or indirectly take or receive in money, goods or thing in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or other thing in action than twelve (12) per centum per annum." Rem. & Bal. Code, § 6251.

"If a greater rate of interest than is hereinbefore allowed shall be contracted for or received or reserved, the contract shall not, therefore, be void; but if in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the plaintiff shall only recover the principal, less the amount of interest accruing thereon at the rate contracted for, and the defendant shall recover costs; and if interest shall have been paid, judgment shall be for the principal, less twice the amount of interest paid, and less the amount of all accrued and unpaid interest. . . . " Rem. & Bal. Code, § 6255.

The finding clearly shows that the $500 was exacted for the services of the respondent in procuring the contract and for advancing the $960. A part of the consideration for the $500 was legal and a part illegal. The contract is not separable or severable. Commenting upon the intermingling of legal and illegal considerations, in *Brown v. Nevitt*, 27 Miss. 801, the court pertinently remarked: "It is well settled, that where the transaction is one entire contract, and it is usurious as to a part of it, it is illegal as to the whole;" citing: *Harrison v. Hannel*, 1 Eng. C. L. R. 780; *Jackson v. Packard*, 6 Wend. (N. Y.) 415; *Flemming v. Mulligan*, 2 McCord (S. C.) 173, 13 Am. Dec. 707; *Motte v. Dorrell*, 1 McCord (S. C.) 350, 10 Am. Dec. 675; Chitty, Cont. (6th Am. ed.), 707; *Brigham v. Marean*, 7 Pick. (Mass.) 40; *Loomis v. Newhall*, 15 Pick. (Mass.) 167; *Coulter v. Robertson*, 14 Smedes & M. (Miss.) 18.

In *Sims v. Alabama Brewing Co.*, 132 Ala. 311, 31 South. 35, a like rule is announced in the following language:

"Where the contract is entire, incapable of divisibility, the rule undoubtedly is that a promise to do an act which is illegal or a promise to do a legal act based upon an illegal consideration, is void."

In *Miller v. Life Ins. Co.*, 118 N. C. 612, 24 S. E. 484, 54 Am. St. 741, speaking of usury, it is said:

"That, if it is the purpose of the lender to get more than the lawful rate of interest for loan of money, and if there be a provision, a condition, a contingency, in or connected with the contract by which he may do so, it is usurious."

In *Blake v. Yount*, 42 Wash. 101, 84 Pac. 625, 114 Am. St. 106, this court said:

"Of course, if it appears upon the face of the transaction that there is any trick or device or subterfuge by which the borrower is compelled, in order to get the money to pay a larger amount of interest than is allowed by the statute, the note will be determined to be usurious; . . . ."

In *McNamara v. Gargett*, 68 Mich. 454, 36 N. W. 218, 13 Am. St. 355, the court, discussing the question of public policy, said:

" 'This rule may, however, be safely laid down, that wherever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void, as being against public policy.' "

The same principle is announced in *Missouri K. & T. Trust Co. v. Krumseig*, 77 Fed. 32, and *Brower v. Life Ins. Co.*, 86 Fed. 748.

The respondent, under the finding of the court, has directly received a greater interest than twelve per cent per annum. The statute announces a rule of public policy having for its object the protection of the public against the rapacity of the money lender, and any contract for the payment of a rate of interest in excess of the maximum rate is usurious. We will not overlook the fact that the value of the services of the respondent in procuring the contract was inconsiderable. Practically the only service he could have rendered was to prepare the applications on blank forms furnished by the state. The sale was a public one, open to all bidders. A return is made by a public officer. Neither upon his testimony nor under the finding was there any engagement

to pay any definite sum for the service. The legal and illegal are therefore so blended and intermingled as to be incapable of separation, and the entire note of $500 was usurious.

There was no provision in the respondent's mortgage for future advances. The court allowed him a lien for certain specific sums advanced to the mortgagor subsequent to the filing of the appellant's mortgage. The mortgagor remained in possession and harvested the crop. The theory upon which these claims were given a preference over the second mortgage was that the advances were made for seed, provisions, a storage granary, and harvesting expenses. These items were not included in the respondent's mortgage, and his lien cannot be extended to include them as against the lien of a junior mortgage. As we have pointed out, the respondent's mortgage secured the payment of certain enumerated notes only. In *Dunsmuir v. Port Angeles Gas, W. El. L. & P. Co.*, 24 Wash. 104, 63 Pac. 1095, it was held that the holder of a chattel mortgage who pays delinquent taxes upon the mortgaged property acquires no additional lien thereby.

"A chattel mortgage given to secure a certain indebtedness therein expressed cannot be extended to become a lien for another and different indebtedness, except perhaps by agreement between the parties, and such an agreement cannot be enforced to the detriment of creditors or junior encumbrancers." 6 Cyc. 1020, 1021.

"Debts created, or advances made to a mortgagor, subsequent to the mortgage, cannot be tacked to the mortgage debt, to the prejudice of third persons who have acquired a junior lien on the mortgaged property." *Schiffer v. Feagin*, 51 Ala. 335.

"When, under a mortgage providing for future advances, but leaving it optional with the mortgagee whether he shall make them, they are made after he has been advised that a subsequent mortgage has been given upon the property, his lien for such advances will be postponed to that of the junior incumbrance." *Davis v. Carlisle*, 142 Fed. 106.

See, also, *Weathersbee v. Farrar*, 97 N. C. 106, 1 S. E. 616.

The court found that the appellant Edgecombe delivered the wheat to the respondent, who shipped and sold it. Charges against the wheat were allowed as follows:

Interior Bac. charges
Freight to Tacoma
Storage at Tacoma
Commission . . . . . . . . . . . . . . . . . . . . . .$809.82.
Insurance . . . . . . . . . . . . . . . . . . . . . .  90.49.
Interest . . . . . . . . . . . . . . . . . . . . . .  31.96.

Appellants contend that none of these charges should have been allowed. The freight, warehouse storage, and commission charges were expenses of handling and selling the grain, and properly chargeable against the proceeds. In other words, on an accounting the respondent can only be held for the net proceeds of the wheat. No claim has been made that the wheat was sold for less than its market value. The interest and insurance items should not have been allowed. There is no finding that they were authorized either by the mortgagor or the junior mortgagee. Nor does the evidence show what the interest charge is based on, or that the insurance was of any benefit to the appellant corporation. *Booth v. Baltimore Steam Packet Co.*, 63 Md. 39.

The case will be remanded with directions to disallow the $960 note and interest thereon, in entering the new judgment, it being extinguished by doubling the $500 note as a credit and disallowing interest, as the statute commands. And with further directions to disallow, as against the appellant corporation all advances made by the respondent subsequent to the execution of his mortgage, excepting the items for warehouse and storage charges, freight and commission; and to disallow as to the appellant Edgecombe, in addition to the credits for usury, the two items consisting of interest and insurance. The appellants will recover costs.

Rudkin, C. J., Chadwick, Fullerton, and Morris, JJ., concur.